JOHN CRAWFORD, Plaintiff v. GARY BOYETTE, HARRY D. STEPHENSON, CARY OIL
CO., INC., A NORTH CAROLINA CORPORATION, RALPH WALDO THOMASSON
AND WIFE ETHEL THOMASSON, Defendants

No. COA95-37

(Filed 5 December 1995)

**Limitations, Repose, and Laches § 42 (NCI4th)— contaminated
well—official notification—accrual of statute of
limitations**

In an action to recover for personal injuries based on nui-
sance, trespass, and strict liability under N.C.G.S. § 143-215.93,
which allegedly resulted from contamination of plaintiff's well
water by petroleum, the trial court erred in holding that plaintiff's
action was barred by the three-year statute of limitations, since a
mere suspicion of contamination will not begin the statute of lim-
itations period; plaintiff took reasonable steps to determine if his
well was contaminated; and plaintiff instituted this action within
three years after receiving official notification that his well water
was contaminated with benzene. N.C.G.S. § 1-52(16).

**Am Jur 2d, Limitation of Actions §§ 112, 119-121.**

**Application of statute of limitations in private tort
actions based on injury to persons or property caused by
underground flow of contaminants. 11 ALR5th 438.**

Appeal by plaintiff from order entered 26 September 1994 by
Judge George R. Greene in Wake County Superior Court. Heard in the
Court of Appeals 5 October 1995.

Plaintiff filed this action on 3 April 1992 for personal injuries
based on nuisance, trespass, and strict liability under N.C. Gen. Stat.
§ 143-215.93 (1993), which allegedly resulted from contamination of
plaintiff's well water by petroleum.

From 1986 until 1991, plaintiff rented a house from Mae Price
Realty (Price). During this time, a gas station known as Triangle Mini-
Mart was located at the corner of Airport Road and Highway 54 in

CRAWFORD v. BOYETTE

[121 N.C. App. 67 (1995)]

Morrisville, North Carolina. The station was owned by defendant Gary Boyette and operated by defendant Cary Oil Company, Inc. (Cary Oil).

When plaintiff moved into the house, he was aware that well water in the vicinity was alkaline because of the presence of lime. Plaintiff noticed that the water had a funny smell and bad taste but attributed the odor and taste to the presence of lime in the well. Initially, plaintiff neither drank, cooked, nor bathed with the well water but only used it for the garden and to wash dishes.

In October 1987, plaintiff contacted the Wake County Health Department (WCHD) to find out if the water was suitable for bathing. Louis Vega, a county employee, conducted a chloroform bacterial analysis and suggested that plaintiff chlorinate the well. While the possibility of petroleum was discussed, no test was conducted at that time to determine the presence of petroleum products. Vega "recommended down the road getting other tests of the well but said as far as he knew it was basically okay for use . . . [f]or anything other than drinking or cooking."

On 7 October 1988, Jay Zimmerman, of the Groundwater Section of the Division of Environmental Management, visited plaintiff at home to collect a sample of plaintiff's well water. At this time, plaintiff learned that his neighbor's well was contaminated and that the Groundwater Section wanted to test his well water to determine the source of the pollution. Mr. Zimmerman told plaintiff that he was not certain whether plaintiff's well was contaminated and that a determination could not be made until the analysis was complete. Mr. Zimmerman said he would contact plaintiff regarding the results.

On 6 April 1989, plaintiff received a letter with a copy of the technical results which listed the chemical compounds present in the water and the concentration levels detected. The technical results did not specifically identify petroleum as a contaminant but noted that benzene and para dichlorobenzene were present in plaintiff's water. In a form dated 2 June 1989 entitled, "Drinking Water Health Risk Evaluation for Petroleum Products," the plaintiff received the following information:

> Your water contains a chemical (benzene) that is known to cause cancer in humans. The U.S. Environmental Protection Agency has set a maximum contaminant level of 5 ug/1 (ppb) for benzene.

CRAWFORD v. BOYETTE

[121 N.C. App. 67 (1995)]

This is the level that is considered acceptable for <u>public</u> water supplies. Even at this level, there may be some risk of cancer. The level of benzene in this water cannot be predicted from one time to another.

Based on this benzene level, this water should not be used for drinking or cooking. Prolonged bathing/showering should be avoided.

. . .

Chemicals indicate gasoline contamination. Benzene levels are 102 times the MCL. Because of the possibility of increased exposure by absorption or inhalation during showering, showering should be avoided if possible to reduce any health risk and bathing, although allowed, should not be prolonged.

Within three years after this official notification, plaintiff initiated this action for nuisance and trespass arising from the contamination of plaintiff's well water with gasoline. In response, defendants contend that plaintiff's claims are barred by the statute of limitations.

*Kenneth N. Barnes for plaintiff-appellant.*

*Smith & Holmes, P.C., by Robert E. Smith; and Ransdell, Ransdell & Cline, by Phillip C. Ransdell; for defendants-appellees.*

WALKER, Judge.

Plaintiff's sole assignment of error is whether the trial court erred by granting defendants' motion for summary judgment. Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990). A defendant who moves for summary judgment bears the burden of establishing that there is no genuine issue as to any material fact and that defendant is entitled to judgment as a matter of law. A defendant may meet this burden by "(1) proving that an essential element of plaintiff's claim is nonexistent, or (2) showing through discovery that plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that plaintiff cannot surmount an affirmative defense which would bar the claim." *Watts v. Cumberland County Hosp. System*, 75 N.C. App. 1, 6, 330

S.E.2d 242, 247 (1985), *reversed on other grounds*, 317 N.C. 321, 345 S.E.2d 201 (1986).

Defendant argues that plaintiff's claims were barred by the statute of limitations and thus defendants were entitled to summary judgment. The statute of limitations having been pled, the burden is on the plaintiff to show that his cause of action accrued within the limitations period. *Hooper v. Lumber Co.*, 215 N.C. 308, 311, 1 S.E.2d 818, 820 (1939). Plaintiff's cause of action for trespass, nuisance, and personal injury are all subject to the three-year statute of limitation set forth in N.C. Gen. Stat. § 1-52 (1994). In order to determine if plaintiff's action is within this three-year period, the Court must determine when the cause of action accrued. N.C. Gen. Stat. § 1-52(16) provides:

> Unless otherwise provided by statute, for personal injury or phys-ical damage to claimant's property, the cause of action, except in cases of actions referred to in G.S. 1-15(c), shall not accrue until bodily harm to the claimant or physical damage to his property becomes apparent or ought reasonably to have become apparent to the claimant, whichever event first occurs. Provided that no cause of action shall accrue more than 10 years from the last act or omission of the defendant giving rise to the cause of action.

N.C. Gen. Stat. § 1-52(16) (1994). Thus, the Court must determine when plaintiff's bodily harm became apparent or ought reasonably to have become apparent.

Plaintiff contends that the three-year statute of limitations did not accrue until he received official notification by letter dated 6 April 1989 from the State that his well was contaminated with petroleum. In support of his argument, plaintiff relies on the Supreme Court case *Wilson v. McLeod Oil Co.*, 327 N.C. 491, 398 S.E.2d 586 (1990), *reh'g denied*, 328 N.C. 336, 402 S.E.2d 844 (1991). In *Wilson*, plaintiffs sued defendants for gasoline contamination of their well water from underground storage tanks. *Id.* at 498, 398 S.E.2d at 588. Our Supreme Court reversed summary judgment against plaintiffs Hill and Wilson finding that such actions were not barred by the statute of limitations. There the evidence showed that plaintiffs Hill and Wilson did not dis-cover the contamination until 1984, when tests by the Alamance County Health Department (ACHD) detected gasoline contamination. *Id.* at 512, 398 S.E.2d at 597. The defendants in *Wilson* argued that the claims of Hill and Wilson accrued when the families first began to notice there was something wrong with their well and stopped using

the water in 1982. *Id.* at 512, 398 S.E.2d at 596. The Court held that "[p]rior to the determination by the ACHD that their water was contaminated the Hills and Wilsons did not know that they had a cause of action for the contamination of their water." *Id.* at 512, 398 S.E.2d at 597. The Court reversed summary judgment against these plaintiffs, finding that the action was "less than three years after they were notified by government agents in May 1984 that test results proved that their water was contaminated with gasoline." *Id.*

This decision was followed by this Court in the recent case *James v. Clark*, 118 N.C. App. 178, 454 S.E.2d 826 (1995), *disc. review denied*, 340 N.C. 359, 458 S.E.2d 187 (1995). In *James*, plaintiffs noticed something wrong with the well water as early as 1982. *Id.* at 183, 454 S.E.2d 829. They stopped drinking the water in 1983 and stopped cooking with it the following year. *Id.* Plaintiffs filed a complaint against the defendants in 1988 that included claims of negligence, trespass, and nuisance for damages arising out of contamination of their well water. The evidence did not show that plaintiffs suspected their well was contaminated with gasoline until 1986 when they began to associate the water's bad taste with gasoline. *Id.* at 183, 454 S.E.2d 829-830. This Court held that the plaintiffs did not know the water was contaminated until it was tested by the Department of Environment, Health and Natural Resources shortly after 1986. Therefore, the Court found that plaintiff's complaint, filed 9 December 1988, was not barred by the statute of limitations. Upon examination of these cases, it is apparent that a mere suspicion of contamination will not begin the statute of limitations period. *Id.* at 184, 454 S.E.2d at 830. Rather, both cases used the date plaintiff received official notification of contamination as the date the cause of action accrued. To hold otherwise, would penalize a party for taking precautionary measures while awaiting action from state agencies.

Applying this rule to the facts in our case, the evidence shows that while plaintiff noticed the water tasted bad and smelled funny and did not use the water for drinking or cooking, he attributed the taste and odor of the water to the presence of lime in the well. Furthermore, plaintiff took reasonable steps to determine whether his well was contaminated. In October 1987, the plaintiff contacted the Wake County Health Department to determine if the water was suitable for showering. At this time, plaintiff was told that the water was "okay for use." A year later, the water was tested by an employee of the Division of Environmental Management, who told plaintiff that

FARM CREDIT BANK v. EDWARDS

[121 N.C. App. 72 (1995)]

he could not determine whether the water was contaminated until the results of the analysis were collected. Plaintiff was not notified of the results until he received a letter dated 6 April 1989. No warnings were provided to plaintiff regarding petroleum contamination until plaintiff received the State's detailed findings dated 2 June 1989. At this stage of the proceedings, there is sufficient evidence to support the conclusion that the limitations period did not accrue prior to 6 April 1989 when plaintiff first received official notification that his well water was contaminated with benzene. Therefore, plaintiff's complaint, filed 3 April 1992, was within the limitations period.

Having found that plaintiff filed his complaint within the three-year period, we find that the trial court erred by granting summary judgment in favor of the defendants.

Reversed.

Judges LEWIS and MARTIN, MARK D. concur.